CHICO-POLO v DEPARTMENT OF CORRECTIONS

Docket No. 307804. Submitted December 12, 2012, at Grand Rapids.
Decided January 8, 2013, at 9:00 a.m. Leave to appeal sought.

Daulys Chico-Polo, who was not an American citizen but was serving
a sentence of life imprisonment, brought an action for mandamus
or declaratory relief in the Ingham Circuit Court, alleging that the
Department of Corrections was required to parole and release him
to the custody and control of United States Immigration and
Customs Enforcement for deportation pursuant to MCL 791.234b,
which requires that these actions be taken if a prisoner has been
ordered to be deported, was not convicted of certain crimes or
sentenced as an habitual offender, and has served at least half of
the minimum sentence imposed by the court. The court, Clinton
Canady III, J., denied the motion, ruling that although MCL
791.234b would apply to plaintiff once he had become eligible for
parole after serving his statutory mandatory minimum sentence
under MCL 791.234, that would not occur until 2017. Plaintiff
appealed.

The Court of Appeals held:

MCL 791.234b does not apply to prisoners serving life sen-
tences. MCL 791.234b requires the parole board to place a prisoner
on parole and release that prisoner to the custody and control of
the United States Immigration and Customs Enforcement for the
sole purpose of deportation if a final order of deportation has been
issued against the prisoner, the prisoner has served at least half of
the minimum sentence imposed by the court, the prisoner is not
serving a sentence for criminal sexual conduct or first- or second-
degree homicide, and the prisoner was not sentenced as an
habitual offender. By specifying that the minimum sentence must
have been imposed by the court, the Legislature excluded prison-
ers who were eligible for parole but serving a life sentence because
the date on which a prisoner becomes eligible for parole was fixed
by the Legislature, not imposed by a court.

Affirmed.

BOONSTRA, J., concurring in the result, wrote separately to note
that, in the absence of a clear indication of the Legislature's intent
with regard to the factual situation at issue, the only two

choices available to the Court of Appeals in applying MCL 791.234b in this case arguably violated a rule of statutory construction. He concluded that the trial court had not abused its discretion by denying the extraordinary relief of mandamus because plaintiff had not satisfied the burden of establishing the existence of a clear legal right to performance by defendant of a clear legal duty.

PRISONS AND PRISONERS — STATUTES — PAROLE — DEPORTATION — LIFE SENTENCES.

MCL 791.234b requires the Parole Board to place a prisoner on parole and release that prisoner to the custody and control of the United States Immigration and Customs Enforcement for the sole purpose of deportation if a final order of deportation has been issued against the prisoner, the prisoner has served at least half of the minimum sentence imposed by the court, the prisoner is not serving a sentence for criminal sexual conduct or first- or second-degree homicide, and the prisoner was not sentenced as an habitual offender pursuant to MCL 769.10, 769.11, or 769.12; MCL 791.234b does not apply to prisoners serving life sentences.

Daulys Chico-Polo *in propria persona.*

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Scott R. Rothermel*, Assistant Attorney General, for the Department of Corrections.

Before: HOEKSTRA, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM. In this action for mandamus, plaintiff Daulys Chico-Polo appeals as of right the trial court's order denying his request for mandamus or declaratory relief compelling defendant, the Department of Corrections, to parole and release him to the custody and control of the United States Immigration and Customs Enforcement (ICE) for the purpose of deportation pursuant to MCL 791.234b. Because we conclude that MCL 791.234b does not apply to prisoners serving life sentences, we affirm.

Chico-Polo sought review of his file regarding his eligibility for deportation under MCL 791.234b.[1] A memorandum addressed to Chico-Polo and dated March 16, 2011, from a Department of Corrections departmental analyst indicated that review of Chico-Polo's file showed he was not "within the guidelines" of MCL 791.234b because he was serving a life sentence, and he would accordingly "not be eligible to be deported under the provisions" of the statute. In response, Chico-Polo filed a Step I grievance with the Department of Corrections. The department denied his grievance on April 18, 2011. Chico-Polo thereafter filed a Step II grievance, which the department denied on June 1, 2011. Finally, Chico-Polo filed a Step III grievance, which the department denied on July 7, 2011. Thereafter, Chico-Polo filed two separate requests with the Department of Corrections for declaratory rulings. The department did not respond to either request. Under the department's administrative rules, unanswered requests are deemed denied.[2]

Having exhausted his administrative remedies, Chico-Polo filed a pro se complaint for mandamus or declaratory relief in the trial court on September 19, 2011. In his complaint he alleged that defendant was required to parole and release him to the custody and control of ICE for the purpose of deportation pursuant to MCL 791.234b because he had already served more than half of his statutory minimum of 20 years. His complaint alleged that 20 years was his statutory mini-

[1] Chico-Polo is not an American citizen, and an order of deportation against him was issued in 2003.

[2] Specifically, Mich Admin Code, R 791.1115(3) provides: "The director or his or her designee may, but is not required to, issue a declaratory ruling when properly requested. Lack of response within 30 days of receipt of the request shall be deemed a denial of the request for a declaratory ruling."

mum because after 20 years he would be eligible for parole despite the fact that he was serving a life sentence.

On October 31, 2011, defendant filed a brief in response to Chico-Polo's mandamus complaint, arguing that MCL 791.234b was not applicable to prisoners who were serving life sentences. Chico-Polo filed a pro se brief in response to defendant's brief on November 10, 2011, wherein he argued that the Legislature clearly intended to impose a minimum sentence of 20 years for violation of MCL 333.7401(2)(a)(i). The trial court denied Chico-Polo's requests for relief in a written opinion, stating:

> This Court finds there is nothing in the plain language of [MCL 791.234b] that precludes its application to the present case. Under MCL 791.234(7)(b), a prisoner sentenced to life imprisonment under [MCL 333.7401(2)(a)(i)] is subject to parole board jurisdiction and may be placed on parole after having served . . . 20 calendar years. Since this is a statutory minimum, Plaintiff must serve the entire 20 years before being considered for parole and deportation under [MCL 791.234b]. Plaintiff will be parole eligible on July 16, 2017 and would be subject to consideration for deportation under [MCL 791.234b] at that time.

On this basis, the trial court denied Chico-Polo's request for mandamus. Chico-Polo now appeals the trial court's order and opinion as of right.

Chico-Polo was convicted of delivering or manufacturing a controlled substance greater than 650 grams, MCL 333.7401(2)(a)(i), and was sentenced to life imprisonment on August 5, 1998.[3] His life sentence does

___

[3] At the time Chico-Polo was sentenced, MCL 333.7401 required a sentence of life imprisonment for violation of MCL 333.7401(2)(a)(i). Effective March 1, 2003, the statute was amended to change the amounts of controlled substances in each subsection. Subsection (2)(a)(i) now

not, by its terms, provide a minimum sentence from which to calculate his eligibility for parole. But a provision of the Corrections Code, MCL 791.201 *et seq.*, states that prisoners sentenced for violations of MCL 333.7401(2)(a)(*i*) who have served 20 years of their sentence are "subject to the jurisdiction of the parole board and may be placed on parole" in accordance with several specific conditions. MCL 791.234(7). Below, and now on appeal, Chico-Polo argues that the 20-year minimum for parole eligibility for individuals given life sentences should be held to be the "minimum sentence" required by MCL 791.234b(2)(b). Defendant responds by arguing that a life sentence, as such, does not have a "minimum sentence" from which to calculate eligibility under MCL 791.234b(2)(b) and, therefore, the trial court properly denied Chico-Polo's application for a writ of mandamus. The parties have not supported their arguments beyond merely announcing their respective positions, but nevertheless, as presented, the issue before us is one of statutory interpretation. Specifically, we must determine whether MCL 791.234b applies to prisoners who are serving life sentences but are nonetheless eligible for parole.[4]

Issues of statutory interpretation are questions of law that we review de novo. *Driver v Naini*, 490 Mich 239, 246; 802 NW2d 311 (2011). The goal of statutory interpretation is to discern the intent of the Legislature by examining the plain language of the statute. *Id.* at

proscribes the delivery or manufacture of 1,000 grams or more of a controlled substance. See 2002 PA 710.

[4] In its brief on appeal defendant also argued that mandamus was not appropriate under the circumstances of this case; however, at oral argument defendant conceded that MCL 791.234b is not discretionary and that if Chico-Polo satisfied the requirements of MCL 791.234b and defendant refused to parole and deport him, mandamus would be appropriate.

246-247. "When the language is clear and unambiguous, we will apply the statute as written and judicial construction is not permitted." *Id.* at 247. " 'Courts may not speculate regarding legislative intent beyond the words expressed in a statute.' " *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217; 801 NW2d 35 (2011) (citation omitted). The plain meaning of a statute's words provide the most reliable evidence of the Legislature's intent. *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009). "Unless defined in the statute, every word or phrase should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Tuggle v Dep't of State Police*, 269 Mich App 657, 663; 712 NW2d 750 (2006) (citations and quotation marks omitted).

MCL 791.234b provides in pertinent part:

(1) [T]he parole board shall place a prisoner described in subsection (2) on parole and release that prisoner to the custody and control of the United States immigration and customs enforcement for the sole purpose of deportation.

(2) Only prisoners who meet all of the following conditions are eligible for parole under this section:

(a) A final order of deportation has been issued against the prisoner by the United States immigration and naturalization service.[5]

(b) The prisoner has served at least ½ of the minimum sentence imposed by the court.

(c) The prisoner is not serving a sentence for any of the following crimes:

---

[5] The functions formerly performed by the Immigration and Naturalization Service, which has been abolished, were transferred to the Department of Homeland Security under Title IV of the Homeland Security Act, PL 107-296, 116 Stat 2135.

(*i*) A violation of section 316 or 317 of the Michigan penal code, 1931 PA 328, MCL 750.316 and 750.317 (first or second degree homicide).

(*ii*) A violation of section 520b, 520c, or 520d of the Michigan penal code, 1931 PA 328, MCL 750.520b, 750.520c, and 750.520d (criminal sexual conduct).

(d) The prisoner was not sentenced pursuant to section 10, 11, or 12 of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.10, 769.11, and 769.12.

Particularly important to resolution of the issue before us is the language included in MCL 791.234b(2)(b) which provides that in order to be paroled and released to ICE, the prisoner must have "served at least ½ of the minimum sentence *imposed by the court.*" (Emphasis added.) By requiring that the minimum sentence be imposed by the court, the Legislature essentially excluded prisoners, such as Chico-Polo, who are eligible for parole but serving a life term because at best, the date on which a prisoner would become eligible for parole is fixed by the Legislature pursuant to MCL 791.234 and not imposed by the court. To hold otherwise would render nugatory the plainly stated requirement that the minimum sentence be "imposed by the court." See *Robertson v Daimler-Chrysler Corp*, 465 Mich 732, 748; 641 NW2d 567 (2002) (stating that "it is important to ensure that words in a statute not be ignored, treated as surplusage, or rendered nugatory"). Prisoners serving life sentences do not and never will have a minimum sentence *imposed by the court.* Consequently, even if we were to accept Chico-Polo's implicit argument that the term of years after which he is eligible for parole is equivalent to a minimum sentence, the Legislature imposed this "minimum sentence," not the trial court as required by MCL 791.234b(2)(b). Therefore, the plain language of MCL 791.234b(2)(b) excludes prisoners serving life sentences

from eligibility for parole and deportation under MCL 791.234b. Any contrary interpretation ignores, treats as surplusage, or renders nugatory the words "imposed by the court" in MCL 791.234b.

Further, the conclusion that the Legislature specifically added the requirement that minimum sentences be "imposed by the court" to exclude prisoners who are eligible for parole but serving life sentences is bolstered by the presumption that the Legislature is aware of the existence of all the laws in effect when it enacts new laws. *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 713; 664 NW2d 193 (2003). MCL 791.234b was enacted after MCL 791.234. Accordingly, we must assume that the Legislature was aware of the effect of MCL 791.234 on MCL 791.234b.[6] Thus, presuming the Legislature was aware that MCL 791.234 effectively imposed a minimum sentence for all prisoners serving life sentences for violations of MCL 333.7401(2)(a)(*i*) by giving those prisoners parole eligibility after 20 years, the inclusion of the phrase "imposed by the court" in MCL 791.234b must be interpreted as a conscious decision to exclude those prisoners serving life sentences but eligible for parole.

Therefore, we conclude that the plain language of MCL 791.234b excludes prisoners serving life sentences. Accordingly, because he is serving a life sentence, Chico-Polo is not eligible for parole and deportation pursuant to MCL 791.234b.

Affirmed.

HOEKSTRA, P.J., and BORRELLO, J., concurred.

---

[6] We note that MCL 791.234 and MCL 333.7401 were enacted and effective before MCL 791.234b, which did not take effect until April 1, 2011. See 2010 PA 223.

BOONSTRA, J. (*concurring*). I concur in the result. I write separately to address two factors that counsel me toward that decision.

First, I suspect that the issue raised in this appeal is one that the Legislature never considered, and hence it is difficult to discern from the statutory scheme any legislative intent to answer the question before us. That is not a criticism of the Legislature, but merely an observation that legislatures cannot always anticipate factual situations that later may give rise to issues that were not contemplated at the time of the passage of the legislation in question.

As a consequence, we are here faced with two choices, neither of which is optimal, given that both arguably violate a rule of statutory construction. Under the first choice, as the majority notes, a failure to affirm the trial court would render nugatory the plainly stated require- ment that the minimum sentence be "imposed by the court." See *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 748; 641 NW2d 567 (2002) ("[I]t is important to ensure that words in a statute not be ignored, treated as surplusage, or rendered nugatory."). Simply put, the trial court imposed no minimum sentence, but instead imposed an indeterminate life sentence with no mini- mum term. Any deviation that might result from that sentence by way of an earlier release date is purely a creation of the Legislature, and was not "imposed by the court."[1]

---

[1] To hold otherwise would require an exercise of mental gymnastics that the majority is not, nor am I, prepared to employ, i.e., that although the trial court imposed no minimum sentence (but rather only an indeterminate life sentence), it was aware at the time of sentencing that the Legislature had adopted truth-in-sentencing laws, making the trial court's imposition of an indeterminate life sentence, with no mention of any minimum term, the equivalent of the trial court's "imposing" a minimum sentence of 20 years. By the same token, I am not prepared, as

The second choice that is available to us, for which the majority opts in affirming the trial court, arguably fares no better in terms of its adherence to the rules of statutory construction. Specifically, MCL 791.234b contains a number of explicit exceptions, one of which is for the offense of first-degree murder in violation of MCL 750.316. MCL 791.234b(2)(c)(*i*). The penalty for that offense is "imprisonment for life[.]" MCL 750.316(1). Consequently, by concluding (as the majority does in affirming the trial court) that the plain language of MCL 791.234b implicitly excludes prisoners serving life sentences, we effectively render nugatory the existing explicit exception for first-degree murder (since there would be no need for it, as it would be subsumed within the implicit exception for prisoners serving life sentences). As noted, "it is important to ensure that words in a statute not be ignored, treated as surplusage, or rendered nugatory." *Robertson*, 465 Mich at 748.

In endeavoring to interpret the language of MCL 791.234b, we are thus left with two imperfect choices. Ultimately, the best choice would be a third one, i.e., for the Legislature to address this issue by way of statutory amendment, and to make plain its legislative intent as applied to the factual situation before us. But such a legislative solution is not currently available to us.

This leads me to the second factor that guides my decision. This matter comes before us on appeal from the denial of a writ of mandamus. The issuance of a writ of mandamus "is an extraordinary remedy." *Citizens Protecting Michigan's Constitution v Secretary of State*, 280 Mich App 273, 284; 761 NW2d 210 (2008). "The plaintiff bears the burden of demonstrating entitlement

is the majority, to interpret the inclusion of the phrase "imposed by the court" in MCL 791.234b as a "conscious decision to exclude those prisoners serving life sentences but eligible for parole."

to the extraordinary remedy of a writ of mandamus." *Citizens for Protection of Marriage v Bd of State Canvassers*, 263 Mich App 487, 492; 688 NW2d 538 (2004). We review a trial court's denial of a writ of mandamus for an abuse of discretion. *In re MCI Telecom Complaint*, 460 Mich 396, 443; 596 NW2d 164 (1999). A trial court abuses its discretion when its ruling falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

To show entitlement to the extraordinary mandamus remedy, a plaintiff must demonstrate that (1) the plaintiff has a clear legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform the act requested, (3) the act is ministerial, and (4) no other remedy exists that might achieve the same result. *Tuggle v Dep't of State Police*, 269 Mich App 657, 668; 712 NW2d 750 (2006).

I conclude that plaintiff has not satisfied this burden. At a minimum, and for the reasons noted, I cannot find in the statute a *clear* legal duty on the part of defendant, or that plaintiff has a *clear* legal right to the performance of the alleged duty. If anything is clear, it is that the statute is *unclear* with regard to its application to defendant. Consequently, I am unable to conclude that the trial court abused its discretion by denying plaintiff the requested extraordinary relief of mandamus.[2]

---

[2] Plaintiff's alternative request for declaratory relief fails for similar reasons. The grant or denial of declaratory relief is within the sound discretion of the trial court, and we grant the trial court substantial deference when reviewing its decision. MCR 2.605; *PT Today, Inc v Comm'r of the Office of Fin & Ins Servs*, 270 Mich App 110, 129; 715 NW2d 398 (2006) ("Under the deferential standard of review outlined in MCR 2.605, a reviewing court must affirm the trial court's decision even if a reasonable person might differ with the trial court in its decision to

I therefore concur in the result reached by the majority.

---

withhold relief."). For the reasons noted, a reasonable person would find support in the canons of statutory interpretation for either plaintiff's or defendant's position, and the correctness of plaintiff's preferred interpretation is therefore far from clear. Therefore, this Court should not, and properly does not here, upset the trial court's sound exercise of discretion in denying plaintiff declaratory relief.